Sandy JACKSON, Will Johnson, and Otis Jones, on behalf of themselves and all others similarly situated, Plaintiff,

v.

**ADVANCE AUTO PARTS, INC., Defendant.**

**No. CIV.A.1:03–CV–1006CC.**

United States District Court,
N.D. Georgia,
Atlanta Division.

March 9, 2005.

Grant E. Morris, PHV, Office of Grant E. Morris, David W. Sanford, PHV, Gordon Silberman Wiggins & Childs, Washington, DC, Alan Howard Garber, The Garber Law Firm, Atlanta, GA, for Plaintiff.

Donna L. Keeton, Walter Christopher Arbery, Hunton & Williams, Atlanta, GA, Hill B. Wellford, Jr., Hunton & Williams, Richmond, VA, for Defendant.

## *ORDER*

COOPER, District Judge.

Pending before the Court in this action brought under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, are three separate motions for summary judgment brought by Defendant Advance Auto Parts, Inc. ("Defendant") against each of the individually-named plaintiffs, as well as several other related motions. After a careful review of the voluminous record in this case, including the depositions of the named Plaintiffs, the Court makes the following findings:

## I.  DEFENDANT'S MOTIONS TO STRIKE

### A.  MOTION TO STRIKE PORTIONS OF PLAINTIFFS' DECLARATIONS

█ Defendant has filed a motion to strike portions of the declarations submitted by Plaintiffs in opposition to Defendant's motions for summary judgment, arguing that the declarations were constructed to mirror the applicable test under the Federal Regulations regarding whether or not an employment position should be classified as exempt under the FLSA, and that they contain legal conclusions, lack specific facts, are not based on personal knowledge, and/or contradict Plaintiffs' deposition testimony.  In opposition, Plaintiffs contend that their declarations conform with the requirements of Federal Rule of Civil Procedure 56(e), and thus should not be stricken.

As pointed out by Defendant, a review of Plaintiffs' declarations demonstrates that the declarations are virtually identical, are essentially devoid of any factual information with respect to Plaintiffs' individual experiences, instead referring to Assistant Managers in general, or are in many respects contrary to Plaintiffs' deposition testimony.  It is clear to the Court that the declarations were designed to rebut the test set forth in the regulations for exempt status, and are an attempt to create an issue of fact to defeat summary judgment.

In a recent factually similar case involving alleged violations of the FLSA where a similar attempt was made to create an issue of fact, the district court found as follows:

> Plaintiff attempts to create a factual question regarding the nature of his responsibilities by introducing an affidavit in which he fashions himself as a "working foreman," claiming that his most important duties were akin to those of his team members:  serving customers and selling product.  A party opposing summary judgment may not substitute an affidavit alleging helpful facts in place of earlier deposition testimony in hopes of avoiding summary judgment.  *See McCormick v. City of Fort Lauderdale,* 333 F.3d 1234, 1240 (11th Cir.2003) (court may disregard affidavit submitted for sole purpose of defeating summary judgment motion when deposition testimony directly contradicts affidavit) (quoting *Van T. Junkins & Assoc., Inc. v. U.S. Indus., Inc.,* 736 F.2d 656, 657 (11th Cir.1984) ("when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony")).  Plaintiff may not create a factual dispute by attempting to recharacterize the nature of his position.  Plaintiff's affidavit is stricken from the record insofar as it is inconsistent with Plaintiff's deposition testimony.

*Moore v. Tractor Supply Co.,* 352 F.Supp.2d 1268, 1276 (S.D.Fla.2004).  The reasoning in *Moore* is directly analogous to the situation in the instant matter, and for the same reasons as those stated in that case, this Court will not consider those portions of Plaintiffs' declarations that are inconsistent with their deposition testimony or that are without factual support in ruling on Defendant's motions for summary judgment.

### B.  MOTION TO STRIKE PLAINTIFFS' DESIGNATION OF DISPUTED FACTS

Defendant has also moved to strike Plaintiffs' "Designation of Disputed Facts" filed in opposition to Defendant's motion for summary judgment.  Similar to Plaintiffs' declarations, much of their disputed facts contain conclusory assertions that are unsupported by evidence in the record.[1]

---

**1.**  Plaintiffs' statements regarding "Assistant    Managers at Advance Auto Parts" in general

In any event, as discussed in more detail below, a review of the entirety of Plaintiffs' deposition testimony, as well as the other evidence in the record, demonstrates that Plaintiffs' disputed facts are insufficient to create a genuine issue of fact regarding whether Plaintiffs were properly classified as exempt employees under the FLSA.

## II. SUMMARY JUDGMENT MOTIONS

### A. FACTUAL BACKGROUND

#### 1. Facts Common to Each Plaintiff

Advance Stores Company, Incorporated ("Advance"), a subsidiary of Defendant Advance Auto Parts, Inc., is primarily engaged in the retail sale of automotive parts and accessories. Advance is the corporate entity that employed Plaintiffs Sandy Jackson ("Jackson"), Will Johnson ("Johnson"), and Otis Jones ("Jones") (collectively referred to herein as "Plaintiffs") during the relevant time period.[2]

In general, each Advance store has a Store Manager, Assistant Manager, an Assistant Manager in Training ("AMIT"), a Parts–Pro, an Inventory Specialist, and several full or part-time cashiers or salespersons. Plaintiffs were each employed as Assistant Managers at various Advance stores. According to the job description for the Assistant Manager position: "The Assistant Manager is to authorize, manage, delegate, and direct the day-to-day operations of the store as their primary duties, encompassing the relative freedom from direct supervision in fulfilling operational and sales objectives." Jackson Depo., Exs. 14, 15.[3] As Assistant Managers, Plaintiffs were members of their particular stores' management team, which consisted of the Store Manager, Assistant Manager, and the AMIT. The Store Manager and the Assistant Manager are the only store employees who are eligible to receive incentive bonuses.

---

are not material and will not be considered because each of the Plaintiffs have conceded that they are not pursuing any "collective action" claims in this case, and they have testified that they have no personal knowledge regarding either their co-Plaintiffs' duties or the duties of any other Assistant Managers with whom they did not work. Deposition of Sandy Jackson (hereinafter "Jackson Depo."), pp. 243–44; Deposition of Will Johnson (hereinafter "Johnson Depo."), pp. 197, 285, 307; Deposition of Otis Jones (hereinafter "Jones Depo."), pp. 286–88.

2. In its motions for summary judgment, Defendant (Advance Auto Parts, Inc.) argues that Plaintiffs' claims against it should be dismissed because it was not Plaintiffs' employer. Rather, Advance (Advance Stores Company, Incorporated) is or was Plaintiffs' employer. Defendant contends that because it asserted this defense in its Answer and stated in several other documents filed with the Court that Advance Stores Company, Incorporated was the proper defendant, dismissal of Plaintiffs' Complaint against it is

warranted because Plaintiffs have sued the wrong entity. In response, Plaintiffs have filed a motion to amend their Complaint to name the proper party, asserting that Advance has suffered no prejudice and that the substitution of Advance for Defendant is only technical in nature. Given the course of the litigation in this action, the Court agrees that no prejudice has been shown to Advance. However, in light of the Court's rulings *infra*, Plaintiffs' motion to amend is moot in any event, and the motion will be denied on that basis.

3. Although the Assistant Manager job description clearly contains the language quoted above, Plaintiffs dispute this description, pointing to the Assistant Manager orientation materials to suggest that their primary duties are actually different than managing and directing the day-to-day activities of the store. However, the orientation materials also state that the Assistant Manager has the primary duties quoted above, and Plaintiffs have pointed to only select portions of these materials out of context to support their contention that management was not their primary duty.

## 2. *Plaintiff Jackson*

Jackson was hired by Western Auto Supply Company/Parts American ("Western Auto") in 1997 to work in one of their stores in Amherst, Ohio. Jackson was originally hired in a part-time position, but was later promoted to Assistant Manager, which was a full-time, salaried position. In November 1998, Advance Auto Parts, Inc. acquired Western Auto, and Jackson became an employee of Defendant's subsidiary, Advance. In September 1999, Jackson was promoted to Store Manager at a store in or near Lorain, Ohio. In approximately October 2001, Jackson's position again changed to a salaried Assistant Manager, and she was transferred to a different store in Ohio. In February 2002, Jackson was transferred to Georgia, where she has worked at two different Advance store locations as a salaried Assistant Manager. In approximately January 2004, Jackson's position was changed to an hourly Assistant Manager.

From the time she moved back into the Assistant Manager position in 2001 until January 2004, Jackson's salary was $600.00 per week or higher. Jackson understood that, as a salaried employee, she would receive a fixed amount of money for every work week regardless of the number of hours she worked, and she acknowledges that she received her full salary for every work week throughout her employment as a salaried employee. As a salaried Assistant Manager, Jackson also participated in the Assistant Manager Bonus Plan, and she has received bonuses under the plan.

Jackson acknowledges that she was given a copy of the Assistant Manager job description. She also admits that she was told that leadership, delegation, and communication were part of her responsibilities and duties as an Assistant Manager, and that store profitability, inventory management, payroll/budget management, and training and development, which were some of the criteria that she was evaluated on, were also part of her responsibilities as a salaried Assistant Manager. With respect to store profitability, Assistant Managers were expected to try to enhance the store's ability to increase income and increase sales. According to Jackson, the main way an Assistant Manager could impact store sales and improve store performance was to sell as much as possible.

Jackson worked in the store without the Store Manager being present for approximately 60% of her working time,[4] and during those times, Jackson was in charge of the store. Jackson Depo., pp. 202–05.[5] Although there were some decisions that required Jackson to call the Store Manager to get his okay, as an Assistant Manager Jackson had to be capable of making decisions in the absence of the Manager, and anything that happened in the store when a Manager was not present was her responsibility. *Id.*, p. 205. In this regard, when the Store Manager was not present, Jackson was responsible for delegating tasks to the other employees at the store (*id.*, pp. 158, 191–92, 214, 267, 296),[6] she counseled and/or disciplined the other employees[7] (*id.*, pp. 161–68), she prepared

---

**4.** As an Assistant Manager, Jackson had keys to the store, the store's alarm code, and access to the store safe.

**5.** Because in their responses to Defendants' motions for summary judgment Plaintiffs have often quoted to portions of their deposition testimony out of context in an attempt to create an issue of fact, the Court has cited to the record with respect to those facts which Plaintiffs have disputed in order to point to

Plaintiffs' actual testimony at their depositions.

**6.** Even when both she and the Store Manager were present in the store at the same time, Jackson would still delegate tasks, *Id.* at p. 246, and she continued to be responsible for supervising other employees. Deposition of David Satterfield ("Satterfield Depo."), p. 95.

**7.** While Jackson contends that sometimes the Store Manager would override her decisions

work schedules on occasion, (*id.*, p. 93), she had the authority to send employees home if business was slow, (*id.*, pp. 207–08),[8] and had the authority to make adjustments to work schedules if an employee did not report to work (*id.*, p. 210). Jackson also had the authority to make decisions regarding customer refunds. *Id.* at pp. 213–14. In addition, as part of the management team, Jackson was responsible for verifying the money in the cash registers and preparing bank deposits on a daily basis, *id.* at p. 219, and was responsible for approving "paid outs" when money is taken from the register, *id.* at p. 257. Jackson also has to train new employees, and this is something that is a regular and customary part of her job. *Id.* at p. 157.[9]

Further, while Jackson testified that she probably spent 90% of her time performing cashier duties and stocking and cleaning, she also acknowledged that ensuring successful operations and directing the work activities of others is always a part of her job as an Assistant Manager, and that this responsibility does not stop while she's carrying out a sale or working at the cash register. *Id.* at pp. 294–296.[10] Indeed, Jackson testified as follows:

Q: Now, you would agree with me, would you not, that it was far more important to your position that you be able to run the store in the absence of a manager, for example, than it was for you to be able to sweep and mop?

A: It was more important for me to be able to run the store, yes.

Q: And that—that's the reason that that position existed, right?

A: Yes.

Q: The assistant manager position was to help run the store -

A: Yes.

Q: as opposed to stocking merchandise and janitorial things, right?

A: Yes.

Q: I mean those—those things might be incidental to making sure that things get done and occasionally, you might have to do them, but the reason that your job existed was so that you could run the store, correct?

A: Yes.

Jackson's Depo., pp. 267–68.

### 3. *Plaintiff Johnson*

Johnson was initially hired as an AMIT at the Advance store in Thomaston, Georgia in May 2001. In September 2001, Johnson was promoted to Assistant Manager. In September 2002, Johnson requested and was granted a transfer to the position of Conversion Training Specialist, in which he trained employees how to run

---

with respect to giving tasks and that she needed his approval before counseling employees, from her deposition testimony it is clear that this was the case only with respect to one particular employee who felt that Jackson was picking on him. With respect to this employee, the Store Manager would intervene when issues arose involving him. *See* Jackson Depo., pp. 149–150, 159–167. Other than this particular employee, when employees are told what to do by Jackson, they have to do it. *Id.* at p. 150.

**8.** Jackson testified that most of the time she would call her manager regarding sending

someone home due to slow business, but if she could not get in touch with her manager, she had the authority to do send the employee home. *Id.*

**9.** Jackson has also recommended that employees be terminated, and her recommendations have been followed. *Id.* at pp. 169–171; *see also* Satterfield Depo., p. 78.

**10.** *See also*, Deposition of Elvin Johnson (Advance Division Manager), pp. 161–165; Deposition of Frank Coe (Store Manager), pp. 53–54; Deposition of Jerome Felton (Store Manager), p. 39.

the cash register. Johnson returned to the Thomaston store as an Assistant Manager in approximately February 2003. Johnson's employment with Advance ended in March 2003 after he gave a customer a new fuel pump without first requiring the customer to pay for the new pump or to bring in the allegedly defective pump.

Immediately prior to his termination, Johnson's salary was $515.20 per week. When he was first promoted to Assistant Manager, Johnson's salary was $500 per week, and it remained at that level or higher until his termination. When he was promoted to an Assistant Manager, Johnson understood that this was a salaried, exempt position and that he would be paid the same salary each week for all the hours he worked, regardless of whether he worked more or less than 40 hours. Other than one week when he was erroneously paid less than his full salary, which error was corrected the next week, Johnson's full salary was paid for each work week during which he was employed as an Assistant Manager.

Although Johnson had not seen the job description for the Assistant Manager position before his deposition, when he became an Assistant Manager, Johnson was told that Assistant Managers were expected to exercise management skills, tell people what to do and delegate tasks. According to Advance's Exempt Performance Appraisal form, Assistant Managers are evaluated on planning skills, leadership skills, training/development, payroll/budget/management, shrinkage/expense control, inventory management and store profit. Johnson acknowledged that he was evaluated on these criteria in his 2002 evaluation prepared by his Store Manager. Specifically, Johnson acknowledged that his responsibilities included controlling shrinkage (inventory or cash shortages), store profit,[11] and assigning tasks. Johnson Depo., pp. 184–87.[12] In addition, Johnson's Store Manager and Division Manager told him that the primary duties of his Assistant Manager position would be to "supervise store activities, supervise employees, hire and fire, do scheduling, inventory, and sales." *Id.*, pp. 48–50. Johnson acknowledges that as an Assistant Manager, he was responsible for doing "whatever it takes to run a store," *Id.* at p. 180, a sentiment shared by Johnson's Store Manager, Division Manager, and Regional Vice President, who all testified that the most important function of the Assistant Manager is to oversee the operations of the store on a day-to-day basis.[13] Johnson's Division Manager testified that "leading by example, doing all the duties that you require that your team members do" is an example of a way that an Assistant Manager would supervise and direct store operations, Bearden Depo., pp. 119–20, and Johnson testified that he "led by example," and that he "worked hard and some employees worked hard because they

---

11. Store profit was one of the items that would make Johnson eligible for a bonus under the Assistant Manager bonus plan, which conditioned bonuses on store performance and profitability based on revenues and net income after operating expenses. Johnson received several bonuses during the time he was an Assistant Manager, and he believed that he had a part in improving the store's performance.

12. Johnson was told by his superiors that he should delegate more work. *Id.*, p. 276.

13. When asked how much time an Assistant Manager spends overseeing the store and directing operations, Johnson's Division Manager, David Bearden, testified "from the time that [they] get there until the time that [they] leave." Bearden Depo., p. 120. Similarly, Shane Phillips, Johnson's Store Manager, testified that Johnson "spent 100% of the week managing the team in one way or another." Phillips Depo., p. 120.

saw [him] working hard." Johnson Depo., pp. 166–67.[14]

Johnson testified that there rarely were two management persons working at the store at the same time, and thus he was usually working in the store without the Store Manager present. During a typical work week, Johnson worked 60% of his working time without the Store Manager present.[15] *Id.*, pp. 220, 228–29, 256–57. Johnson would be in charge of the store during these times, and the responsibility for the store fell on him. *Id.* at pp. 156, 170, 221.[16] Indeed, Johnson testified that, when the Store Manager was not there, "[t]hat's a day when I'm responsible for everything that happens in the store, correct .... If an emergency something come [sic] up, I'm the person that had to make the decision." *Id.*, p. 221.

Johnson recognized that he was ultimately responsible for what was happening in the store even if he was also helping a customer at the same time. *Id.*, p. 200. Further, even if he was working at the cash register, the other employees also did not forget that he was ultimately responsible for the store because he was the only management person there. *Id.* at p. 231.; *see also*, Bearden Depo., pp. 118–20; Phillips Depo., pp. 99, 117–121.

As the Assistant Manager, Johnson could bring in employees to replace employees already on the schedule who called in sick. Phillips Depo., pp. 30–31. Johnson also provided verbal feedback to employees regarding their performance.[17] Johnson Depo., pp. 52–53. Johnson also handled customer complaints. *Id.*, pp. 171, 259. In addition, as a member of the management team, Johnson closed the store, at which time he was responsible for ensuring that the cash in the registers was correct, he approved cash paid-outs, put money in the safe overnight, prepared bank deposits, and filled out the Management Planning and Training report with the actual performance of the store. *Id.*, pp. 259–60, 263.

### 4. *Plaintiff Jones*

Jones was originally hired as an AMIT at an Advance store in Newnan, Georgia. In December 2001, Jones was promoted to Assistant Manager and transferred to another Advance store in Newnan. Jones was terminated in July 2002 for signing a refund without proper verification.

When Jones was first promoted to Assistant Manager, his salary was $525.20 per week. In approximately June 2002, he received a raise to $551.20 per week. Jones understood that when he was promoted to Assistant Manager, the position was an exempt salaried position and that he would receive his full salary even if he did not work a certain number of hours per week.[18] He also understood that, as a

---

14. In his resume created after he left Advance, Johnson described his responsibilities as Assistant Manager as follows: "Supervised all store activities, which included scheduling, inventory and sales." Johnson Depo., Ex. 2.

15. Johnson admitted that there wasn't much overlap in work hours among members of the management team "because you always needed one management person to cover the store, so ... you had to spread out the hours" among the management team members. Johnson Depo., pp. 101–02.

16. During the time that Johnson was an Assistant Manager, there were always at least three employees working in the store.

17. There were also several occasions when Johnson gave people employment applications, encouraged them to apply for employment, and recommended that they be hired.

18. While Jones contends that his salary was reduced once for an absence in approximately March 2002, he admits that he does not have the paycheck stub or any documents in support of this contention. Jones Depo., pp. 53–55, 59. In any event, according to Advance's payroll records, Jones' full gross salary was

salaried Assistant Manager, he would not receive overtime pay if he worked more than 40 hours per week. Jones also participated in the Assistant Manager Bonus Plan.

As an Assistant Manager, Jones was evaluated on customer service, communication skills, planning skills, leadership skills, training and development, sales, payroll/budget, shrinkage/expense control, inventory management, store/department appearance, and safety awareness. Jones Depo., p. 142.

The Store Manager, Jones as the Assistant Manager, and the AMIT (the management team) wore white shirts, while. the rest of the employees wore red shirts, so "customers coming in the store could tell ... who they can talk to in case they have some question that they need answered," and he admitted that the reason that the management team members wore white shirts was so that the customers would know who was "in charge" of the store. *Id.*, pp. 145–147.

In a typical work week, Jones was scheduled to work without another member of the management team in the store for over 30 (out of 50) hours, and during these times he was in charge of the store, making sure everything was done. *Id.*, pp. 164–172, 233. When he was in charge, Jones delegated tasks to other employees (*id.*, p. 150), trained employees (*id.*, pp. 177, 187–89, 199), opened and closed the store[19] (*id.*, pp. 178, 234–35), counted cash

and verified the cash register (*id.*, pp. 192–193, 234–35), reviewed the weekly payroll and prepared the store payroll for processing (*id.*, pp. 90, 148–49), answered questions and solved problems that arose at the store to the best of his ability (*id.*, pp. 179–80), approved customer refunds (*id.*, pp. 241–44, 246), handled customer complaints (*id.*, p. 220), and informed another employee to order additional inventory if needed (*id.*, pp. 149–150).

Jones testified that he had to watch over the other employees while running the register and doing inventory. *Id.* at pp. 177, 183, 199–200. In this regard, Jones testified that "[i]f I'm the only assistant manager there, I will be held accountable for ... anything [that] goes wrong," and that simultaneous with helping a customer or ringing up a sale on the cash register, he was still responsible for making sure that everybody else was doing their jobs. *Id.* at 210–11, 233. Jones further testified that, when he was the only management team member at the store, his "main function" was "to make sure everybody is doing their jobs." *Id.* at 167–68.[20] Jones' Division Manager and Regional Vice President similarly testified that the most important function of the Assistant Manager is to manage, delegate and direct the store operations. Deposition of Herold Smart, pp. 88, 112; Deposition of Evander Jarold, pp. 167–68.

## B. *DISCUSSION* [21]

paid for each work week from the time Jones was promoted to Assistant Manager in December 2001 until his termination in July 2002.

**19.** When he closed the store, Jones was responsible for reporting the amount of sales and the number of employee work hours to the Division Manager at the end of the day. Jones Depo., pp. 239–40.

**20.** On the resume Jones prepared after his termination from Advance, Jones described

his duties as an Assistant Manager at Advance as follows: "Oversee and direct day-to-day activities of retail operations, hire and train sales personnel, responsible for verifying cash in registers and making daily bank deposits, involved in all aspects of customer service, including asking questions, problem solving, and assisting customers with their purchases." Jones Depo., pp. 180–182, Ex. 17.

**21.** As stated in footnote 1, *supra*, Plaintiffs have stated that they have not pursued any

### 1. Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c). While the movant carries the initial burden of showing the absence of a genuine issue as to any material fact, the movant is not required to negate his opponent's claim, but rather, may discharge his burden merely by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). When this burden is met, the non-movant is then required "to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)).

■ A court evaluating a summary judgment motion must view the evidence in the light most favorable to the non-movant. *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir.1988); *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir.1986), *reh'g denied*, 815 F.2d 66 (11th Cir.1987). However, Rule 56 "[b]y its very terms, ... provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is

that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–8, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. An issue is not genuine if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511; *accord Young v. General Foods Corp.*, 840 F.2d 825, 828 (11th Cir.1988). Substantive law will identify which facts are material. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

### 2. FLSA

■ The FLSA, which was enacted to protect the health, efficiency and welfare of workers in the United States, requires that employees be paid time and a half for work over forty hours per week. 29 U.S.C. § 207(a)(1). However, Section 213(a)(1) exempts from this requirement "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).[22] There are two tests for determining whether an employee qualifies for exempt status: the "short test" and the "long test." *Atlanta Prof'l Firefighters Union, Local 134 v. City of Atlanta*, 920 F.2d 800, 804 (11th Cir., 1991). Pursuant to the regulations issued by the Department of Labor ("DOL"),[23] employees who are paid a sala-

collective action claims in this case and that they do not object to the dismissal of such claims without prejudice. As such, Plaintiffs' collective action claims are not addressed here.

**22.** Exemptions under the FLSA are to be construed narrowly against the employer, and the

employer bears the burden of proving that the employee qualifies for exempt status. *Evans v. McClain of Georgia, Inc.*, 131 F.3d 957 965 (11th Cir.1997).

**23.** Regulations such as those implementing the FLSA are given controlling weight unless they are arbitrary, capricious, or manifestly

ry of more than $250.00 per week need only satisfy the "short test" to be qualified as executive or administrative employees. 29 C.F.R. §§ 541.1(f), 541.2(e)(2), 541.119(a);[24] *see also Nicholson v. World Bus. Network*, 105 F.3d 1361, 1364 (11th Cir.1997). The parties in this action do not dispute that each of the Plaintiffs were paid more than $250.00 per week, and that therefore the "short test" applies in this case.

■ Under the short test, an employee is classified as a bona fide executive if: "(1) the employee is paid on a salary basis, and (2) the employee's primary duty consists of management of the enterprise in which the employee is employed or of a customarily recognized department thereof, and includes the customary and regular direction of the work of two or more other employees therein."[25] *Debrecht v. Osceola County*, 243 F.Supp.2d 1364, 1368 (M.D.Fla.2003) (citing 29 C.F.R. § 541.1(f)). While it is undisputed that each of the Plaintiffs were paid on a salary basis,[26] Plaintiffs dispute that their primary duty was management, and thus this issue is addressed in detail below.

a. Management as primary duty

Under the regulations, "management" includes activities such as: interviewing, selecting and training employees, adjusting their hours of work, directing their work; maintaining production or sales records to use in supervision or control; appraising their work for the purpose of recommending promotions or other change in status; planning the work; handling employee complaints and grievances; apportioning work among employees, and providing for the safety of the employees and property. 29 C.F.R. § 541.102. The determination of whether an employee has management as his primary duty must be based on all the facts in a particular case. 29 C.F.R. § 541.103. Ordinarily, primary duty means that the employee is performing managerial duties during a major part, or over 50 percent, of the employee's time. 29 C.F.R. § 541.103.[27] However,

> [t]ime alone ... is not the sole test, and in situations where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as his primary duty if the other pertinent factors support such a conclusion. Some of these pertinent factors are the relative importance of management duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision, and the relationship between his salary and the wages paid other employees for the kind

contrary to the statute. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

24. Reference is made to the regulations in effect at the time of Plaintiffs' Complaint, and not to their recent amendment effective on August 23, 2004. *See* 69 FR 22122 (April 23, 2004).

25. Under the "long test," factors such as authority to hire and fire, the exercise of discretionary powers, and limits on the percentage of time devoted to activities that are not directly or closely related to the performance of

exempt work are also analyzed. 29 C.F.R. § 541.119; *Nicholson*, 105 F.3d at 1364.

26. Pursuant to the DOL regulations, "[a]n employee will be considered to be paid 'on a salary basis' within the meaning of the regulations if ... he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.118(a).

27. "Primary duty" is now codified at 29 C.F.R. § 541.700.

of nonexempt work performed by the supervisor. *Id.*[28]

### b. Plaintiffs' contentions

■ Pointing to Advance's job description for the Assistant Manager position, Plaintiffs argue that Defendant's own documents create an issue of fact as to whether management was the primary duty of its Assistant Managers. More specifically, Plaintiffs contend that Advance's job description demonstrates that Plaintiffs' primary duty was sales, and that functions such as operating the cash register and cleaning the store were essential duties. However, the job description states further that "[a]s the Assistant Manager, you along with your Store Manager are accountable for your store's overall sales results,[and] you must make sales important to the store staff." Jackson Depo., Ex. 15, Jones Depo, Ex. 19. As such, the job description actually supports Advance's contention that management was Plaintiffs' primary duty. As stated above, the job description for the Assistant Manager position clearly states that managing and directing the day-to-day operations of the store was the primary duty of the position.

Plaintiffs also contend that management was not their primary duty because they spent 90% of their time performing nonexempt tasks, including selling, operating the register and cleaning the store.[29] However, where Plaintiffs " 'down-play and minimize the importance of [their] position[s], testifying that [they] spent most of [their] time performing routine non-

managerial jobs,' [t]he courts have tended to reject such post-hoc efforts to minimize the relative importance of managerial duties." *Haines v. Southern Retailers, Inc.*, 939 F.Supp. 441, 450 (E.D.Va.1996) (quoting *Meyer v. Worsley Companies, Inc.* 881 F.Supp. 1014, 1020 (E.D.N.C. 1994), and citing *Murray v. Stuckey's Inc.*, 939 F.2d 614, 618 (8th Cir.1991); *Donovan v. Burger King Corp.*, 672 F.2d 221, 227 (1st Cir.1982); *Horne v. Crown Cent. Petroleum, Inc.*, 775 F.Supp. 189 (D.S.C. 1991)). Instead, courts recognize that the time spent performing non-managerial duties is not determinative under the short test, but rather, "the employee's primary duty is what she does that is of principal value to the employer, not the collateral tasks that she may also perform, even if they consume more than half her time." *Dalheim v. KDFW–TV*, 918 F.2d 1220, 1227 (5th Cir.1990); *see also, Reich v. State of Wyo.*, 993 F.2d 739, 742 (10th Cir.1993). As set forth in the Assistant Manager job description, and as Advance's Division Managers and Regional Vice President have testified, managing and directing the day-to-day store operations are the most important functions of the Assistant Manager position. Further, Plaintiffs admit that they worked without supervision for a majority of their working hours, and thus were in charge of their respective stores during these times. At such times, Plaintiffs were responsible for running the store and performing, among other things, the following tasks: delegating tasks to other employees (*see* Jackson Depo., pp.

**28.** The regulations provide the following example: "[I]n some departments, or subdivisions of an establishment, an employee has broad responsibilities similar to those of the owner or manager or the establishment, but generally spends more than 50 percent of his time in production or sales work. While engaged in such work he supervises other employees, ... handles customer complaints, authorizes payment of bills, or performs other management duties as the day-to-day operations require. He will be considered to have management as his primary duty." *Id.*

**29.** As discussed above, however, Plaintiffs' statements in their declarations in support of this contention are conclusory, self-serving, and in many respects contradict their deposition testimony.

191–92, 214, 246, 267, 296; Johnson Depo., pp. 156, 171, 184–87; Jones Depo., p. 150); counseling or disciplining other employees (Jackson Depo., p. 150; Johnson Depo., pp. 52–53); training employees (Jackson Depo., p. 157; Johnson Depo., pp. 264–266; Jones Depo., pp. 177, 187–89, 199); adjusting work schedules (Jackson Depo., pp. 93, 207–08, 210; Phillips Depo, pp. 30–31), handling customer complaints (Johnson Depo., pp. 171, 259; Jones Depo., p. 220) and customer refunds (Jackson Depo., pp. 213–14; Johnson Depo., pp. 271–72; Jones Depo., pp. 241–44, 246); and ensuring that the cash in the registers was correct, preparing bank deposits and end of day reports, and approving paid-outs (Jackson Depo., p. 219, 257; Johnson Depo., pp. 259–60, 263; Jones Depo., pp 192–93).

Moreover, despite their contention that they spent the bulk of the majority of their time performing non-managerial duties, such duties were performed simultaneously with their managerial functions. Indeed, each of the Plaintiffs acknowledged at their depositions that while they were selling to customers, operating the register, or performing other incidental tasks, they were also still overseeing the other employees in the store and making sure that the store was operating properly. Jackson Depo, pp. 267–68; Johnson Depo., p., 200; Jones Depo., pp. 177, 210–11, 233. Under such circumstances, management of their respective stores was Plaintiffs' primary duty. *See* 29 C.F.R. § 541.103 (an employee who "spends more than 50 percent of his time in production or sales work ... will be considered to have management as his primary duty," if, "while engaged in such work[,] he ... performs other management duties as the day-to-day operations require"); *see also, Kastor v. Sam's Wholesale Club,* 131 F.Supp.2d 862, 865–67

(N.D.Tex.2001) (management was department manager's primary duty even though he contended that he spent 90% of his time "performing the exact same work as hourly employees").

Plaintiffs further contend that management was not their primary duty because they lacked discretionary power, and instead had to follow their Store Managers' instructions and/or Advance's policies and procedures. However, the fact that Plaintiffs had to adhere to certain guidelines or in certain instances obtain the Store Manager's approval does not diminish Plaintiffs' discretionary powers. *See, e.g., Donovan v. Burger King Corp.,* 675 F.2d 516, 521–522 (2nd Cir.1982) ("The exercise of discretion ... even when circumscribed by prior instruction, is as critical to [the company's] success as adherence to 'the book.' Burger King, of course, seeks to limit likely mistakes in judgment by issuing detailed guidelines, but judgments must still be made")[30]; *see also, Thomas v. Jones Restaurants, Inc.,* 64 F.Supp.2d 1205, 1213 (M.D.Ala.1999) (same). That the Store Manager may have been available by phone also does not detract from the Court's conclusion that Plaintiffs, as Assistant Managers, exercised discretion. *Burger King,* 675 F.2d at 522; *Thomas,* 64 F.Supp.2d at 1214; *see also, Haines,* 939 F.Supp. at 450 (although plaintiff could not hire or fire without outside management's approval, could not discipline without approval of her supervisor, and was subject to rigid supervision by upper management, plaintiff was still an exempt employee); *Meyer,* 881 F.Supp. at 1016, 1020–21 (executive exemption applied even though upper management had highly standardized practices, allowing managers little input

---

**30.** Despite Plaintiffs' contention that the *Burger King* cases are badly reasoned and distinguishable from the present case, the

*Burger King* cases have been cited and relied upon by numerous courts in both this and other circuits.

into the nature and quality of the inventory).

Lastly, Plaintiffs' argument that they were improperly classified as exempt because their compensation was comparable to that of Advance's nonexempt employees is also without merit. As salaried employees, Plaintiffs received the same pay even if they worked less than 40 hours, and they were eligible for bonuses for which hourly employees were not. *See, e.g., Johnson v. Home Team Productions, Inc.*, 2004 WL 1586552 at *8 (E.D.La. July 15, 2004).[31]

Based upon the record before it, the Court concludes that management was Plaintiffs' primary duty, and as such, Plaintiffs were properly classified as exempt under the FLSA.[32] Accordingly, Defendants' motions for summary judgment are due to be GRANTED.

## III. *CONCLUSION*

Advance's Motions for Summary Judgment Regarding the Claims of Sandy Jackson [42–1], Will Johnson [44–1], and Otis Jones [46–1] are GRANTED. Advance's Motion to Strike Portions of Plaintiffs' Declarations [71–1] is GRANTED. Advance's Motion to Strike Plaintiffs' Designation of Disputed Facts [70–1] is DENIED as moot. Plaintiffs' Motion for Leave to File Amended Complaint [68–1] is also DENIED as moot. This action is hereby DISMISSED

---

31. Plaintiffs also attempt to show that they are not exempt by pointing to factors that are only relevant under the long test, which the parties have agreed does not apply to this case because Plaintiffs were paid on a salary basis in excess of $250 per week. 29 C.F.R. § 541.119(a).

32. For the above-stated reasons, Plaintiffs' contention that they are or were nothing more than "working supervisors" or "working foremen" is without merit.