**Nestor BRILLAS, Plaintiff,**

v.

**BENNETT AUTO SUPPLY, INC., a Florida corporation, and Bob Stamm, individually, Defendants.**

Case No. 09–80068–CIV–RYSKAMP/VITUNAC.

United States District Court, S.D. Florida.

Dec. 21, 2009.

Andrew Ira Glenn, Jack Dennis Card, Jr., Card & Glenn, P.A., Hollywood, FL, for Plaintiff.

Chris Kleppin, Glasser Boreth & Kleppin, Plantation, FL, for Defendants.

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

KENNETH L. RYSKAMP, District Judge.

THIS CAUSE comes before the Court upon Defendant's Bennett Auto Supply, Inc.'s ("Bennett Auto") Motion for Summary Judgment, filed October 30, 2009 [D.E. 18]. Plaintiff Nestor Brillas ("Plaintiff") responded on November 20, 2009 [DE 22], indicating that he has no objection to the relief sought in the summary judgment motion. Defendant Bob Stamm ("Stamm," "Bennett" and "Stamm" will be referred to as "Defendants," collectively) notified the Court on December 10, 2009 that he joins Bennett Auto's summary judgment motion. No reply has been filed. This motion is ripe for adjudication.

### I. Introduction

Plaintiff filed a two-count Complaint alleging violations of the Fair Labor Standards Act (29 U.S.C. § 201, *et seq.*) for alleged overtime violations, one count against each Defendant. Bennett Auto operates by selling auto parts (on a wholesale and retail basis) out of approximately 25 store locations throughout the Florida. (*Declaration of Jennifer Smith* ¶ 3). Since the store locations are the only place out of which Bennett Auto sells parts, these stores are extremely important and must be adequately managed. *Id.* A typical store has ten (10) employees or so, several counter people, delivery drivers, sometimes a dispatcher, sometimes a cashier, and managers. *Id.* Because the stores are open for over 80 hours per week, Bennett Auto needs multiple managers at the store locations (typically a store manager and an assistant store manager, but sometimes a store manager II, hereinafter referred to collectively as "managers" unless otherwise noted), so that there is always a manager present, and so the managers hours are less than the store hours. *Id.* ¶ 4.

The managers will split up the various tasks that they perform, such as opening and closing the store, preparing various written reports (core and defect reports, accounting reports, accounts receivable reports, inventory control reports, and balancing the register reports), deciding who will take the lead concerning resolving intra-employee disputes, who will take the lead concerning hiring and firing (or rec-

ommending that individuals be hired and fired), customer relations (including expanding the profit base), and other tasks. *Id.*

All of the various managers at the store level report to the next highest manager and the district manager. *Id.* ¶ 5. All employees in the stores report to all managers, whenever those managers are on duty. *Id.* Typically, 20–30% of the average store manager and assistant manager's time is spent without another manager in the store, and thus at the time, the manager on location is solely in charge of the store. *Id.*

Plaintiff started working for Defendant on or about August 6, 2007, as an Assistant Store Manager and was paid $650.00 per week plus 4% of the location's net profits. *Id.* ¶ 9. Plaintiff was promoted to a Store Manager as of September 24, 2007, during which time he was paid $750.00 per week while a store manager, plus 8% of the net profit of the store. *Id.* Plaintiff was demoted back to Second Assistant Store Manager on January 14, 2008, and his pay was reduced to $575.00 per week, plus 2% of the net profit of the store. *Id.* Plaintiff's termination date was August 18, 2008. *Id.*

## II. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demon-

strate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). An issue is "material" if it is a legal element of the claim under applicable substantive law that may affect the resolution of the action. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue is "genuine" if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. *See id.* The movant may meet this standard by presenting evidence demonstrating the absence of a dispute of material fact or by showing that the nonmoving party has not presented evidence in support of an element of its case on which it bears the burden of proof. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53. The moving party need not supply "affidavits or other similar materials negating the opponent's claim." *Id.*

Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)). Although the nonmovant need not present evidence that would be admissible at trial, it may not rest on his pleadings. *Id.* "[T]he plain language of rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. *See also Graham v. State Farm Mut. Ins. Co.,* 193 F.3d 1274, 1281–82 (11th Cir.1999).

## III. Analysis

The FLSA provides that

[n]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours, unless such employee received compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(2)(A). The FLSA exempts from the overtime requirement contained in section 207(a) any employees employed in a bona fide "executive" or "administrative" capacity. 29 U.S.C. § 213(a)(1); *Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 965 (11th Cir.1997). Exemptions to the FLSA are construed narrowly, and the employer bears the burden of demonstrating that an employee is exempt. *Id.*

### A. *The Executive Exemption*

The executive exemption inquiry has historically involved two tests: a "long test" and a "short test." *See* 29 C.F.R. § 541.1, *superceded by* 29 C.F.R. § 541.700(2004). Under the historic test, salaried employees earning $250.00 per week, or more, were required to satisfy what was termed the "short test." *See id.* The short test required: 1) that the employee's primary duties consist of management of a customarily recognized department or subdivision, with the specific rule of thumb being 50% or more of the employee's time being spent on exempt tasks, and that the management tasks have relative importance; and 2) that the employee customarily and regularly direct the work of two or more employees. 29 C.F.R. § 541.1, *superceded by,* 29 C.F.R. § 541.700 (2004). This Court has previously acknowledged the historic test and also found that additional considerations under the historic test were the frequency of exercise of discretion,

relative freedom from supervision, and the relationship between the employee's salary and the wages of the people performing the non-exempt work that the employee performed. *Moore v. Tractor Supply Co.,* 352 F.Supp.2d 1268, 1272–79 (S.D.Fla. 2004) (granting summary judgment for manager who spent 90% of his time performing non-exempt tasks).

After August 23, 2004, the regulation that is applicable to the determination as to whether an employee is exempt as a management employee pursuant to the executive exemption is the primary duty exemption found in 29 C.F.R. § 541.100 (2004), which is further defined in 29 C.F.R. § 541.700 (2004). That regulation is similar to the former tests (*see* 29 C.F.R. § 541.1), and case law analyzing the former tests is still applicable. That regulation states as follows:

(a) The term 'employee employed in a bona fide executive capacity' in section 13(a)(1) of the Act shall mean any employee:

(1) Compensated on a salary basis at a rate of not less than $455 per week. . . .

(2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof:

(3) Who customarily and regularly directs the work of two or more other employees; and

(4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100 (2004) (emphasis added). These elements will be discussed in turn.

■ The central question regarding application of the executive exemption is whether Plaintiff's "primary duty" was "management." Whereas Plaintiff admitted that his primary duty was management, at least while he was a store manager for Bennett Auto, the ultimate question has been answered, which requires that the Court grant summary judgment in favor of Defendants on the executive exemption. *Jackson v. Advance Auto Parts, Inc.*, 362 F.Supp.2d 1323, 1330, 1331, nn. 14 & 20 (N.D.Ga.2005) (granting summary judgment for defendant on executive exemption for a claim brought by assistant manager-plaintiffs, in part because the plaintiffs described their employment as assistant managers as being management on their resumes). Plaintiff admitted that he was a manager and that he was promoted to store manager:

Q: Okay. So there's no question when you were store manager at Okeechobee that your primary duty was management, correct?

A: At Okeechobee, yes. Correct.

*Id.* at 115–16. While the Plaintiff did not expressly admit for the time periods that he was an assistant store manager and while he was a second assistant store manager, the record evidence is overwhelming that his primary duty was management while he was working in both of those positions. (*Declaration of Jennifer Smith* ¶¶ 4–12; *Declaration of Alex Goldberg* ¶¶ 4–12; *Declaration of Gary Horner* ¶¶ 4–12; *Declaration of Jeff Kushner* ¶¶ 4–12; *Declaration of Jason Meese* ¶¶ 4–12; *Declaration of Robert Stamm* ¶¶ 4–12; *Declaration of Frank Scalise* ¶¶ 4–12). In any event, the Court will still analyze the factors set forth in § 541.100.

Whether the Plaintiff received more pay than the individuals he supervised is still a criterion with respect to the manager exemption. *Bosch v. Title Max, Inc.*, Case No. CIV.A.03–AR–0463–S, 2005 WL 357411, *6 (N.D.Ala.2005); *Moore*, 352 F.Supp.2d at 1272–79. Plaintiff was paid significantly more than his subordinates and was paid a bonus structure to award his effective management of the store (for all three positions), thereby indicating that Plaintiff was a manager when he worked at each of those positions.

### i. Plaintiff Was Paid a Salary that Exceeded $455.00 Per Week

Plaintiff was paid a salary that exceeded $455.00 per week. Plaintiff was paid weekly base salaries that varied with the three positions, all of which had a percentage of profits as a component, and which included a company vehicle with insurance and gasoline paid by Bennett Auto.

### ii. Management Was Plaintiff's Primary Duty

Initially, under both tests, numerous courts have held that when considering the question concerning whether management was an employee's "primary duty," a more useful question is whether or not the employee's managerial duties constituted the primary value the employer placed on the employee. *Bosch*, 2005 WL 357411, at *6 (citing *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1115 (9th Cir.2001)) (holding that the plaintiffs' "principal value to [defendant] was directing the day-to-day operations of the park even though they performed a substantial amount of manual labor").

Plaintiff's managerial duties constituted the primary value Defendants placed on Plaintiff. (*Dep. of Plaintiff* at 115–16; *Declaration of Jennifer Smith* ¶¶ 4–12; *Declaration of Alex Goldberg* ¶¶ 4–12; *Declaration of Gary Horner* ¶¶ 4–12; *Declaration of Jeff Kushner* ¶¶ 4–12; *Declaration of Jason Meese* ¶¶ 4–12; *Declaration of Robert Stamm* ¶¶ 4–12; *Declaration of Frank Scalise* ¶¶ 4–12). Time spent performing non-exempt tasks does not neces-

sarily determine whether an employee is exempt. 29 C.F.R. § 541.700 (2004). While the former regulations provided that an employee who spent more than 50 percent of his time performing managerial duties had management as his primary duty, that measure was only "a good rule of thumb," and an employee who spent less than half of his time on managerial duties could (and often was) still classified as a "manager." *Moore*, 352 F.Supp.2d at 1272–79 (applying the historic regulations, because the employment of the plaintiff was pre-August 23, 2004, and holding that an employee spending 90% of his time on non-exempt work was nevertheless exempt under the executive exemption).

Cases applying 29 C.F.R. § 541.700 (2004) hold that assistant managers are exempt as long as they perform some management tasks. *See Jackson v. Advance Auto Parts, Inc.*, 362 F.Supp.2d 1323 (N.D.Ga.2005). In *Jackson*, the plaintiffs testified that 90% of their time was spent selling, operating the cash register, and cleaning. *Jackson*, 362 F.Supp.2d at 1334. The plaintiffs downplayed and minimized the importance of their positions, as they testified that they spent most of their time performing routine non-managerial jobs, but the court in *Jackson* was not impressed with such testimony, because, it noted, numerous courts have rejected such *post-hoc* efforts to minimize the relative importance of managerial duties. *Id.* (citing *Haines v. Southern Retailers, Inc.*, 939 F.Supp. 441, 450 (E.D.Va.1996)) (noting that store manager was exempt despite the fact that she could not hire or fire without upper management's approval and was subject to rigid supervision and frequent visits by upper management).

### iii. Plaintiff Customarily and Regularly Directed the Work of Two or More Other Employees

The testimony is overwhelming that Plaintiff did customarily and regularly directed the work of two or more other employees, and did so all the time. (*Dep. of Plaintiff* at 72; *Declaration of Jennifer Smith* ¶ 7; *Declaration of Alex Goldberg* ¶ 7; *Declaration of Gary Horner* ¶ 7; *Declaration of Jeff Kushner* ¶ 7; *Declaration of Jason Meese* ¶ 7; *Declaration of Robert Stamm* ¶ 7; *Declaration of Frank Scalise* ¶ 7). The testimony was that the supervision was daily.

### iv. Plaintiff Had the Authority to Hire and Fire Other Employees or Make Suggestions or Recommendations as to Hiring, Firing, Advancement, or Promotion of Other Employees that Were Given Particular Weight.

The regulations do not apply to those who do not have the power to hire and fire. 29 C.F.R. § 541.106 ("no employee ... can be considered as employed in a bona fide executive capacity unless he is directly concerned with the hiring or the firing and other change of status of the employees under his supervision, whether by direct action or by recommendation to those who [sic] the hiring and firing functions are delegated."). The testimony is over-whelming that Plaintiff had the authority to hire or fire or give recommendations or suggestions as to hiring, firing, advancement, or promotion of other employees that would be given particular weight. (*Dep. of Plaintiff* at 73–75, 83; *Declaration of Jennifer Smith* ¶ 6; *Declaration of Alex Goldberg* ¶ 6; *Declaration of Gary Horner* ¶ 6; *Declaration of Jeff Kushner* ¶ 6; *Declaration of Jason Meese* ¶ 6; *Declaration of Robert Stamm* ¶ 6; *Declaration of Frank Scalise* ¶ 6).

### v. Plaintiff's Compensation Was High Compared to His Subordinates' Pay

The final factor in determining whether Plaintiff's "primary duty" was manage-

ment is the relationship between his salary and the wages paid to non-exempt employees. While courts have not prescribed a formula for determining where an exempt employee's salary is sufficiently higher than a non-exempt employee's wage to support invocation of the exemption, courts have found a sufficient ratio where the manager made at least $250 more per month than the assistant manager and was the only worker eligible for a bonus, where the department manager's salary was 42 percent higher than the weekly salary of the highest paid associate and the manager alone received a bonus and where the manager made twice as much as the hourly employees. *See Baldwin,* 266 F.3d at 1115–16, *Kastor,* 131 F.Supp.2d at 868–69, *Haines,* 939 F.Supp. at 451.

Plaintiff's compensation was significantly more than that of the delivery drivers and counterpersons. That Plaintiff would demand a $40,000/yr salary before he would work for Defendants, especially in light of the meager $7.00–$8.00/hr compensation rate for the counterpersons, is particularly strong evidence that there was a significant difference in the pay concerning the managers and the subordinate employees.

### vi. The Caselaw

The more recent cases applying 29 C.F.R. § 541.700 (2004) hold that assistant managers are exempt, as long as they perform some management tasks. In *Jackson,* the plaintiffs testified that 90% of their time was spent selling, operating the cash register, and cleaning. Jackson, 362 F.Supp.2d at 1334.

### B. *The Administrative Exemption*

The Plaintiff is exempt under the administrative exemption of the FLSA. To show that an employee was employed in an administrative capacity, an employer must demonstrate that the employee is:

(1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . .

(2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a) (2004).

### i. Plaintiff Was Properly Paid a Salary

The Court addressed this factor in the Executive Exemption section. In light of that analysis, Bennett Auto has established that requirement.

### ii. Plaintiff's Primary Duty (Alternative or in Addition to Management) Was the Performance of Non–Manual Work Directly Related to the Management or General Business Operations of the Employer

 The witnesses testified (and Plaintiff specifically agreed) that one of the Plaintiff's primary duties was the performance of non-manual work directly related to the management or general business operations of the Defendants. (*Dep. of Plaintiff* at 89, 91, 92, 169–71; *Declaration of Jennifer Smith* ¶¶ 12–13; *Declaration of Alex Goldberg* ¶¶ 12–13; *Declaration of Gary Horner* ¶¶ 12–13; *Declaration of Jeff Kushner* ¶¶ 12–13; *Declaration of Jason Meese* ¶¶ 12–13; *Declaration of Robert Stamm* ¶¶ 12–13; *Declaration of Frank Scalise* ¶¶ 12–13). One of the key facts concerning this issue is the various reports that the Plaintiff had to draft each day. *See id.; Dep. of Plaintiff* at 89, 91–92. Plaintiff drafted various reports that kept

track of cores and defects, accounting, inventory, accounts receivables and the cash register. Those reports are directly related to both management and general business operations of the employer. (*Declaration of Alex Goldberg* ¶ 12; *Declaration of Gary Horner* ¶ 12; *Declaration of Jeff Kushner* ¶ 12; *Declaration of Jason Meese* ¶ 12; *Declaration of Robert Stamm* ¶ 12; *Declaration of Frank Scalise* ¶ 12). Plaintiff agreed that the drafting of the reports were administrative tasks because they generated paperwork. *Id.* at 89. Plaintiff admitted that:

> Q: Okay. And you understand how drafting the reports, that's work that directly relates to general operations and, also, management practices of the company?
>
> A: Yes.

*Id.* at 89. Plaintiff reiterated that the drafting of the reports was not manual labor, but rather was directly related to general business operations, and implementing a management policy to manage those areas of the store. *Id.* at 91–92.

When Plaintiff as a manager assisted counterpeople or customers directly with parts related issues (finding them the right part and selling it to them), that consisted of non-manual labor directly related to the management or general business operations of the employer or the employer's customers. (*Declaration of Alex Goldberg* ¶ 12; *Declaration of Gary Horner* ¶ 12; *Declaration of Jeff Kushner* ¶ 12; *Declaration of Jason Meese* ¶ 12; *Declaration of Robert Stamm* ¶ 12; *Declaration of Frank Scalise* ¶ 12). Plaintiff reiterated that the counter work he performed while an assistant manager was directly related to general business operations. (*Dep. of Plaintiff* at 170). The sale of these parts to the customer is the most important part of Bennett Auto's business. *Id.* at 169. Plaintiff admitted that such is the main function of Bennett Auto. *Id.* at 170–71.

While an assistant manager, Plaintiff felt that he did more selling parts on the counter than while he was a manager, and he characterized his position behind the sales counter as being "all the time." *Id.* at 175. Plaintiff admitted that his primary duty was exempt administrative work selling parts and the customer service that accompanies said selling. *Id.* at 174 (stating that "[m]y primary duty was counter sales, selling ... parts that were behind me, behind the counter"). Bennett Auto satisfies this element.

### iii. Plaintiffs Primary Duty Included the Exercise of Discretion and Independent Judgment with Respect to Matters of Significance

■ Plaintiff and the other witnesses testified that Plaintiff's job entailed this sort of independent judgment, particularly with respect to the assistance of customers to find the right automotive parts, and while helping counterpersons who needed assistance. Plaintiff described in detail how he would frequently exercise discretion and independent judgment with respect to matters of significance (helping customers locate the right part for the right price), which makes him administratively exempt. Plaintiff also made clear that while he was working the counter assisting customers, something he did a lot of more of when he was an assistant manager than when he was a manager, Plaintiff exercised discretion and independent judgment concerning how he performed that job, as follows:

> Q: So when it came to resolving customer issues, that's discretion and independent judgment that you would Exercise. Correct?
>
> A: It's part of a counter person—
>
> Q: Correct?
>
> A: —sales job.

Q: Sir, I just—it may or may not be part of a counter person's sales job. Also, it may be. It may not be. But the question I'm asking ... when you were assistant manager, you would exercise your discretion and independent judgment to assist a customer that had an issue with finding a part.

A: Oh, yes.

Q: Okay. And that's something that you did quite frequently. Correct?

A: Yes.

*Id.* at 142–43. Accordingly, the Court finds that even if Plaintiff were not an exempt manager, the Plaintiff is administratively exempt.

### IV. Robert Stamm

Although Defendants did not move for summary judgment as to Stamm, because an individual defendant's liability is only derivative to that of the corporate defendant, the Court will grant summary judgment as to Stamm on Stamm's Notice of Joinder in Bennett Auto's Motion for Final Summary Judgment. *Zarate v. Jamie Underground, Inc.*, 629 F.Supp.2d 1328, 1336 (S.D.Fla.2009); *Milbourn v. Aarmada Protection Sys. 2000, Inc.*, 588 F.Supp.2d 1341, 1346 (S.D.Fla.2008). Based on the above, it is hereby,

ORDERED AND ADJUDGED that defendant's motion for summary judgment, filed October 30, 2009 **[D.E. 18]** is GRANTED. Final judgment shall be issued by separate order.